## STATE *versus* HINCKLEY.

Where exceptions *only* are taken, the cause must be determined by the points thus presented; and any questions which might have been raised upon the special findings of the jury, not thus saved, cannot be considered.

When an indictment alleges that the property embezzled was *possessed by C. P. B. and by him delivered to the defendant*, proof that it was delivered by C. P. B. to some *one* acting for, and by the *latter*, to defendant, will support the allegation in the indictment.

EXCEPTIONS, RICE, J., presiding.

This was an indictment against defendant in which were two counts.

The first count charged him with larceny of sundry packages of money belonging to different individuals.

The second count alleged " that Charles P. Branch at Gardiner aforesaid, was possessed of (several packages of bank bills belonging to several individuals,) and the subject of larceny; and the said Charles P. Branch on, &c., at, &c., entrusted and delivered the same packages to Hannibal C. Hinckley aforesaid, who upon the 6th day of January aforesaid, was, and for a long time prior thereto, had been, a common carrier of money, goods and other property, for hire between Gardiner aforesaid and Portland in the county of Cumberland, to be by him, the said Hannibal C. Hinckley aforesaid, carried and conveyed for hire from said Gardiner to said Portland, and there delivered to the proprietors of Prince's Express, so called, to be by them carried and delivered in Boston, Massachusetts; yet the said Hinckley at Gardiner aforesaid, on the 6th day of January aforesaid, did wilfully and feloneously embezzle and fraudulently convert said bills," &c.

There was evidence on both counts.

Evidence was also introduced tending to show that the defendant was not in Gardiner at the time alleged; but that he left Portland for Augusta in the railroad train about the time the train left Augusta; that he came as far as Freeport, where the two trains met, and where the defendant left the

train and took the one bound to Portland, but left it at North Yarmouth and took passage in the cars for Waterville.

It also appeared that when the defendant was detained, or unable to accompany the express, as its messenger, some one of the agents of said express, at the several stations on the route, sent a person in his place, and that one Stearns was occasionally sent in the absence of defendant; and that he stated he came from Portland to Freeport on the day alleged, and there met Stearns on the train from Augusta and received from him a carpet-bag.

It was also shown that the messenger was provided with a carpet-bag for the conveyance of packages of money.

The defendant requested the instruction, that the government must satisfy the jury by the evidence, that the money alleged in the indictment to have been embezzled, was delivered by Branch to the defendant as alleged in the indictment, in order to convict him under the second count.

But the Court declined, and did instruct them, that if they being satisfied from the evidence, that the packages of money described in the indictment came into the hands and possession of defendant, with the full knowledge on his part of their destination, through the agency of some other person who received them for him, from Branch, to be carried and delivered in the manner described in the indictment, and were received by him and converted to his own use before delivery, he would be liable under the second count.

The jury returned a verdict of guilty on the second count, and not guilty on the first, and found specially that the several packages of money described, were not delivered to the defendant at Gardiner by Charles P. Branch, but were received by him at Freeport by the hand of some person to whom they were delivered by said Branch.

The defendant excepted.

*Glazier*, in behalf of the exceptions, contended that in no way was the offence committed in the county of Kennebec.

The delivery of the packages was not here, nor the *embezzlement*, nor the *conversion*, nor was the defendant shown to have been in the county on that day, and as the venue is laid in Kennebec, the error is fatal. Roscoe's Crim. Ev. (4th Am. ed.) 259; same 110 and 644; 26 Maine, 263; 21 Maine, 14; 10 Mass. 154; 8 Wend. 229; 5 Hill, 401; 1 Johns. 66; Hawkins' P. C., B. 2. c. 25, § 83; 3 Bos. and Pul. 569. Other points were also taken.

*Vose*, County Attorney, *contra*. The only question that can be agued arises upon the exceptions. It is of no sort of importance whether the property was delivered directly or through another person. 2 Starkey's Ev. 367, 368. As to the alleged discrepancy between the allegation and finding, the matter is settled in *State* v. *Douglass*, 17 Maine, 193.

The defendant could be indicted either in the county where he took the money or in any county where he converted it. It appears that he brought it into Kennebec. *State* v. *Haskell*, 33 Maine. 127.

*Morrill*, in reply.

1. The first point on which we rely is that the government did not show that the possession was in Branch at Gardiner. Here is a variance between the charge and proof which is fatal. Greenl. Crim. Ev. § 161.

2. The indictment charges a delivery of the packages to defendant by Branch. That being alleged must be proved, but Branch had the property only for a special purpose, and that was accomplished when he gave it up to another agent of the express.

3. The entire offence is charged as committed in this county, the jury have found otherwise.

4. It is indispensable that the offence should be proved as alleged. *The People* v. *Mather*, 8 Wend. 229; McNally's Evidence, 503. *The People* v. *Barrett*, 1 Johns. 66.

CUTTING, J. — Is there any motion in arrest of judgment?

*Morrill*. There is not.

It is said by the County Attorney that there is evidence

the defendant went to Waterville, but the jury do not find he took the money with him, but the conversion appears to have been in the county of Cumberland.

CUTTING, J. — At the argument various points were made, which do not properly arise in the case. The only question now before us, is that which is presented by the exceptions.

It is contended that if Branch was originally possessed of the packages, as his special property, which became so by being delivered to him for a special purpose, and that purpose, on being accomplished by a transfer of the property to another agent of the same company, his special title was terminated and it became vested in the agent to whom it was so delivered, and consequently Branch, when it subsequently came into the possession of the defendant, was not, in the language of the indictment, " possessed of " the property.

Assuming this position to be sound law and good logic, the trouble is, that it is not presented by the exceptions. The request was, that the Court should instruct the jury, that in order to charge the defendant, they must be satisfied that the money " was delivered by Branch to the defendant," which does not presuppose, and nothing more, as now contended, that it came to the defendant through the agency of some person belonging to the company, who was entitled to receive it and thereby discharge Branch from his special liability. If it did, the Judge should have given the requested instruction. But the request was broad enough to embrace any individual, through whose hands the money might have passed to the defendant, whether an agent of the company or the particular agent or servant of Branch, and a delivery to the latter would not have discharged Branch from his personal responsibility and divested him of his constructive possession; and consequently the Judge was justified in refusing to give the instruction precisely as requested. Whereas, the instruction given presented the true issue, which was in substance, that to convict the

defendant, the jury must find, that the property came to him from Branch through the agency of some one acting "for him," the defendant. And the general verdict of guilty establishes the fact, that the jury must have so found, and consequently the person through whose hands the money passed to the defendant's possession, was the *defendant's* and not Branch's or the company's agent. And the reception of the money from Branch by some one acting for the defendant, and a delivery to him, was in law equivalent to the allegation in the indictment, that the delivery was made by Branch to the defendant, on the principle involved in the familiar maxim of the common law, that "he who acts by or through another, acts for himself."

The special findings of the jury could have no other effect than to raise a question of jurisdiction, which is made no part of the exceptions.       *Exceptions overruled.*

SHEPLEY C. J., and TENNEY and APPLETON, J. J., concurred.